**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOWARD J. BROOK,

       Plaintiff,

vs.                                Case No. 3:08-cv-265-J-MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance ("DIB") on March 29, 2004. (Tr. 12, 44, 334). Plaintiff's application was denied. (Tr. 12, 34). Following an administrative hearing on April 9, 2007, the ALJ issued a unfavorable decision on September 25, 2007. (Tr. 12-23). Plaintiff's Request for Review to the Appeals Council was denied on January 25, 2008. (Tr. 5-7). Accordingly, the ALJ's September 25, 2007 decision is the final decision of the Commissioner. (Tr. 12-23). Plaintiff timely filed a Complaint (Doc. 1) in this Court and the case is now ripe for judicial review.

---

[1] The Parties consented to a United States Magistrate Judge exercising jurisdiction. (Doc. 10).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since May 1, 2001, due to loss of vision in the left eye; blackouts; problems with his head, neck, back, right shoulder, and right wrist; depression; lupus; and post-traumatic stress disorder.  (Tr. 44, 56, 63).

### B.     Summary of Evidence Before the ALJ

At the time of the Commissioner's final decision, Plaintiff was 44 years old and had earned a G.E.D.  (Tr. 12-23, 44, 336).  Plaintiff worked as a prison correction officer from 1983 through 1995.  (Tr. 57, 69-76).

#### 1.     Medical Evidence

On August 22, 1995, Plaintiff visited M.J. Jhaveri, M.D. for injuries he sustained in a work related accident on June 5, 1995.  (Tr. 174).  On May 13, 1997, Dr. Jhaveri's diagnoses were recurrent depression, visual disturbance, shoulder strain, cervical strain, headache, and dizziness.  (Tr. 173).  On May 31, 2002, Dr. Jhaveri indicated Plaintiff had done "quite well" under his care, but would need treatment for a long time.  (Tr. 174).   At that time, Plaintiff was getting periodic nerve block injections.  Id.

Dr. Jhaveri completed Social Security Medical Assessment forms for Plaintiff on September 26, 2001 and September 4, 2002.  (Tr. 171, 172).  On September 26, 2001, Dr. Jhaveri indicated Plaintiff's ability to hold a job was affected by his pain; his sitting, standing, and walking limitations, and his depression.  (Tr. 172).  On September 4, 2002, Dr. Jhaveri indicated Plaintiff's functional limitations were decreased vision, decreased attention, and depression, which interfered with his ability to concentrate.  (Tr. 171).

In a letter dated October 22, 2002, Dr. Jhaveri indicated Plaintiff's work related injuries were post-concussion syndrome, cervical strain, and depression. (Tr. 175). Dr. Jhaveri stated Plaintiff's condition had stabilized, but he still suffered from chronic pain syndrome. Id. With regards to Plaintiff's depression, Dr. Jhaveri indicated Plaintiff had not exhibited psychosis or suicidal ideations, but he continued to experience sadness, decreased attention and concentration, and insomnia. Id. Dr. Jhaveri noted Plaintiff was still taking pain killers and antidepressants. Id.

Plaintiff visited Goddard Lainjo, M.D. of Internal Medicine and Rheumatology on May 28, 1996. (Tr. 272). Plaintiff complained of polymyalgias[2] and arthralgias[3]. Id. Plaintiff had tenderness on palpation of the medial aspect of the humeral head, with the findings being more prominent on the right shoulder. (Tr. 273). Plaintiff had some classical trigger point tenderness. Id. Dr. Lainjo diagnosed undifferentiated connective tissue disease, mild to moderate bicipital tendinitis on the right shoulder, and possible fibromyalgia syndrome. Id. Dr. Lainjo ordered a thyroid function test, an antinuclear antibodies ("ANA") test, and a double stranded DNA test. Id. Dr. Lainjo also prescribed Daypro and Flexiril. Id.

Plaintiff returned to Dr. Lainjo on September 26, 2000, more than four years later, for further evaluation of his rheumatic symptoms. (Tr. 270). Plaintiff complained of pain in the joints of his hips, neck, knees, and hands. Id. Dr. Lainjo noted Plaintiff's ANA test

---

[2]Polymyalgia rheumatica (PMR) is an inflammatory disorder that causes widespread muscle aching and stiffness, primarily in the neck, shoulders, upper arms, thighs, and hips. See http://www.mayoclinic.com/health/polymyalgia-rheumatica/DS00441.

[3]Joint pain

was positive.  <u>Id.</u>  Plaintiff was not taking any medication for his rheumatic symptoms at that time.  <u>Id.</u>  Upon examination, Plaintiff had stress tenderness on flexion in the neck, stress tenderness in the shoulders on internal and external rotation, and a slight decrease in range of motion of the hips.  (Tr. 271).  Plaintiff had no periungual erythema or pitted scars.  <u>Id.</u>  Dr. Lainjo diagnosed undifferentiated connective tissue disease.  <u>Id.</u>  However, he indicated other connective tissue diseases should also be considered, including systemic lupus erythema and mixed connective tissue disease.  <u>Id.</u>  Dr. Lainjo prescribed 800 mg of Motrin to be taken three times per day.  <u>Id.</u>

On June 6, 2004, Elek J. Luvigh Ph.D. completed a personality assessment and a psychodiagnostic evaluation of Plaintiff.  (Tr. 163).  Dr. Luvigh diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), major depression (recurrent and mild), and generalized anxiety disorder.  (Tr. 166).  Dr. Luvigh concluded Plaintiff's mental impairments caused "very substantial emotional distress."  <u>Id.</u>  Dr. Luvigh opined Plaintiff did not appear capable of maintaining stable employment and was not expected to be able to maintain stable employment within twelve months.  <u>Id.</u>  Dr. Luvigh recommended Plaintiff obtain both psychiatric treatment and psychotherapy for his mental health conditions.  <u>Id.</u>

On June 18, 2004, Jack E. Pulwers Jr. M.D. performed a consultative examination of Plaintiff.  (Tr. 176-179).  Plaintiff reported to Dr. Pulwers that he was only able to sit or stand for one hour at a time and was unable to get out of bed sometimes.  (Tr. 176).  Plaintiff also reported he experienced stiffness for fifteen minutes each morning.  <u>Id.</u>  Plaintiff complained of pain and swelling in his hips and shoulders.  <u>Id.</u>  However, Plaintiff told Dr. Pulwers he could drive, grocery shop, dress himself, and perform his household

chores.  Id.

On June 29, 2004, Denise Verones, Ph. D, completed a psychological evaluation of Plaintiff.  (Tr. 246).  Dr. Verones indicated Plaintiff suffered from PTSD due to his work in the prison system.  (Tr. 249).  Dr. Verones opined Plaintiff was not capable of maintaining employment as a result of his depressed mood and his anxiety.  Id.  Dr. Verones assigned Plaintiff a GAF score of 55 and stated she considered Plaintiff disabled "from a mental health standpoint."   (Tr. 248-249).

On July 16, 2004, an agency Single Decision Maker ("SDM") completed a Physical Residual Functional Capacity Assessment form and opined one of Plaintiff's exertional limitations was a need to periodically alternate sitting and standing to relieve pain and discomfort.  (Tr. 206).  The SDM explained his opinion was based on the findings of one of Plaintiff's consultative examiners, Dr. Pulwers.  Id.

Plaintiff visited Jeffrey J. Ward, D.O. for the first time on September 23, 2004.  (Tr. 215).  Plaintiff's chief complaints were depression and numbness in his hands.  Id.  Upon physical examination, Plaintiff's thyroid/neck, heart, lungs, and abdomen were normal. Id.  Plaintiff's neurologic examination was also normal.  Id.  Dr. Ward noted mixed connective tissue disease, depression, left eye blindness, degenerative disc disease, and bipolar personality disorder.  Id.  Dr. Ward prescribed 60 mg of Cymbalta for Plaintiff's depression.  Id.  Plaintiff visited Dr. Ward again on October 18, 2004, at which time Plaintiff reported that his mood had improved.  (Tr. 214).  However, Plaintiff complained his hips ached.  Id.  Dr. Ward continued Plaintiff's prescription for Cymbalta and started Plaintiff on Aleve and ice for his hip pain.  Id.  On November 29, 2004, Plaintiff visited Dr. Ward for the flu and for more medication.  (Tr. 213).  Dr. Ward

diagnosed depression and renewed Plaintiff's prescription for 60 mg of Cymbalta. Id. There are no other progress notes from Dr. Ward in the record. However, in a letter dated April 11, 2007, Dr. Ward stated Plaintiff suffered from multiple medical problems including severe arthritis of his right acromioclavicular joint, heart palpations, mixed connective tissue disease, generalized anxiety, depression, and PTSD. (Tr. 331). Dr. Ward also opined Plaintiff should be on permanent disability. Id.

On January 28, 2005, David Carpenter, M.D. performed a consultative examination of Plaintiff. (Tr. 226). Plaintiff reported he was not under the care of a rheumatologist at that time, nor had he ever been treated for any autoimmune disorder or connective tissue disease. Id. Dr. Carpenter included mixed connective tissue disease, chronic migraine headaches, depression, chronic low back pain, posterior neck pain, and right shoulder pain in his diagnoses. Id. However, Plaintiff had no motor or sensory deficits. Id. Dr. Carpenter also noted Plaintiff's grip strength and fine manipulation skills were within normal limits for both upper extremities and Plaintiff ambulated in normal heel to toe fashion. Id.

On February 11, 2005, Dr. Verones completed another psychological evaluation of Plaintiff. (Tr. 242). This time, Dr. Verones assigned Plaintiff a GAF score of 60. (Tr. 244). Dr. Verones opined Plaintiff was experiencing some depression, but indicated Plaintiff was not reporting any symptoms consistent with PTSD. (Tr. 245). After Dr. Verones February 2005 evaluation, she indicated Plaintiff's physical health, not his mental health, was his main problem. Id.

On March 3, 2005, a non-examining agency psychologist, Theodore J. Weber, M.Div., Psy. D., completed a Psychiatric Review Technique form and a Mental Residual

Functional Capacity Assessment form for Plaintiff. (Tr. 262, 266). Dr. Weber indicated Plaintiff had a history of depression and mental health treatment, but was not under any treatment at that time. Id. Dr. Weber opined Plaintiff had moderate limitations in activities of daily living and maintaining concentration, persistence, or pace and mild limitations in maintaining social functioning.

Plaintiff was injured in a motorcycle accident on January 31, 2006. (Tr. 290, 319). X-rays of Plaintiff's right shoulder and right forearm were performed, but there were no signs of fracture or dislocation. (Tr. 279, 280). An MRI of Plaintiff's right shoulder was performed on February 24, 2006. (Tr. 274). The MRI revealed prominent partial thickness tear at the distal insertion of the supraspinatus. Id. Some edema or degenerative signal was noted within the distal tendon and slightly at the myotendinous junction, but no retraction or atrophy was seen. Id. There were also moderate degenerative changes of the acromioclavicular joint with slight lateral tilt of the acromion. Id.

Plaintiff visited James H. Acker, M.D. on March 10, 2006, for an orthopedic consultation. (Tr. 290). Dr. Acker diagnosed impingement syndrome, adhesive capsulitis, degenerative joint disease of the AC joint, and probable chronic calcific tendinitis. (Tr. 291, 293). Dr. Acker ruled out the possibility of additional contribution to right shoulder pain from Plaintiff's neck and back symptoms. Id. After discussing more conservative solutions, Dr. Acker and Plaintiff agreed Plaintiff would undergo surgery. Id. On March 20, 2006, Plaintiff underwent a right shoulder rotator cuff repair, subacromial decompression, and distal clavicle resection. (Tr. 299). Plaintiff began physical therapy on March 31, 2006, and continued through April 28, 2006. (Tr. 311-

317).  Upon discharge, Plaintiff's pain was unchanged, but his mobility was improved.
(Tr. 311).  In a letter dated August 23, 2006, Dr. Acker indicated Plaintiff's continuing
problems were due to his adhesive capsulitis.  (Tr. 319).  Dr. Acker stated while Plaintiff
had some impairment related to motion, improvement could be expected.  Id.  Dr. Acker
also opined Plaintiff's adhesive capsulitis would be resolved with or without treatment in
a year to a year and a half.  Id.

Plaintiff visited the emergency room on March 2, 2007, complaining of heart
palpitations.  (Tr. 324).  Plaintiff indicated the palpitations had begun three weeks before
and had occurred sporadically since then.  Id.  Plaintiff's EKG showed an irregular
heartbeat, but the doctor did not believe Plaintiff's palpitations were due to a serious
condition.  (Tr. 321, 325).  Plaintiff was diagnosed with cardiac arrhythmia.  (Tr. 328).

### 2.  Other Evidence

A hearing before the ALJ was held on April 9, 2007.  (Tr. 332).  Plaintiff alleged
that as a prison correction officer, his primary duties were to quell prison disturbances
and stop inmates from fighting and killing each other.  (Tr. 338).  Plaintiff indicated he
retired on a disability pension from the State of New York in 1995.  (Tr. 341).  Plaintiff
stated that when he retired, he was also on Social Security Disability.  Id.  Plaintiff
testified, in 2005, he worked twice per month for about eight or nine months cutting
lawns.  (Tr. 339-340).  Plaintiff earned approximately $1080 per month doing lawn care.
(Tr. 343).  Plaintiff stated he went to work in 2005 so he could take care of his daughter.
(Tr. 362).  At the time of the hearing, Plaintiff was receiving about $1000 per month from
disability retirement and about $700 bi-weekly for Workers' Compensation.  (Tr. 351).

Plaintiff testified he could not work due to head, neck, back, and right shoulder

injuries. (Tr. 343). Plaintiff alleged he had a tissue disease which also affected those injuries. Id. Additionally, Plaintiff indicated his depression prevented him from working. (Tr. 344). Plaintiff testified, in January 2006, he was hit from behind while riding his motorcycle. (Tr. 344). Plaintiff underwent surgery on his right shoulder on March 20, 2006. Id. Plaintiff claimed the doctor who performed the surgery, Dr. Acker, said the surgery did not work and he wanted to repeat the surgery. (Tr. 346). Plaintiff indicated even though he underwent physical therapy after his surgery, his shoulder was worse than it had ever been. Id. Plaintiff stated his shoulder was in constant pain, he could not move it, and he had less motion than he ever had. (Tr. 348).

Plaintiff testified he visited Dr. Ward every six to eight weeks. (Tr. 348). Plaintiff stated Dr. Ward wanted to do blood work to keep up with Plaintiff's ANA and blood level, but Plaintiff could not afford to have the blood work done. Id. Plaintiff testified Dr. Ward gave him antidepressants, but he was not being treated by any psychologist, psychiatrist, or mental health practitioner. (Tr. 350). Plaintiff indicated he had taken Wellbutrin and Celebrex for his mental problems since 2005 when they were first prescribed. Id. Plaintiff testified Dr. Ward either gave him a new prescription or samples whenever he visited the office. (Tr. 350 - 351). Plaintiff also testified he experienced headaches and dizziness from the medication he was taking for his irregular heartbeat. (Tr. 353).

Plaintiff testified he could only sit or stand for 20 minutes each without changing positions. (Tr. 354 - 355). Plaintiff stated he could climb and he could walk about two blocks. (Tr. 355, 357). Plaintiff testified he was able to brush his teeth, eat, brush his hair, write a short note, start the ignition in his car, and open a doorknob with his right

hand.  (Tr. 355 - 356).  Plaintiff also indicated he could lift light objects with his right hand, he could lift a gallon of milk with his left hand, and he was able to use his fingers to pinch.  Id.  Plaintiff testified the limited vision in his left eye was one of the things that prevented him from working.  (Tr. 358).  However, he also stated he did not wear glasses.  Id.

In terms of daily activities, Plaintiff testified he woke up at about ten o'clock or ten-thirty in the morning because he had a hard time sleeping at night.  Id.  Plaintiff stated he attended AA meetings sometimes or he would drive down to a sober club in Ormond Beach.  Id.  Plaintiff indicated he did not have much housework to do.  (Tr. 359).  Plaintiff stated he ate TV dinners, used the computer just long enough to check e-mail from his daughter, and he did not watch TV or read much.  (Tr. 359 - 360).  Plaintiff testified he did his own laundry and grocery shopping, but did not do any yard work.  (Tr. 360).

Vocational Expert ("VE"), Robert C. Bradley, testified at the administrative hearing.  (Tr. 332).  The ALJ asked the VE whether a person of Plaintiff's age, education, and past relevant work who was: able to sit, stand, and walk up to six hours each, in an eight-hour workday, able lift up to twenty pounds occasionally and ten pounds frequently, unable to do any type of work involving binocular fine visual acuity, and unable to do any climbing or working around heights or around dangerous machinery, could perform any of Plaintiff's past relevant work.  (Tr. 369).  The VE indicated such a hypothetical individual could return to Plaintiff's work as a correctional officer at the light-duty level.  (Tr. 368 - 369).  The ALJ then asked the VE to assume the same hypothetical person was also unable to perform any overhead work or any type of constant reaching, pushing, or pulling with his right upper extremity.  (Tr. 370).  The VE testified that with the

additional limitations, such an individual would not be able to return to any of Plaintiff's past relevant work. Id.

The VE was then asked to identify jobs that could be performed by the hypothetical person with the additional limitations. (Tr. 370). The VE provided several examples of jobs which the hypothetical person would be able to perform, such as price marker, cashier, leveler, surveillance system monitor, assembler, or food and beverage order clerk. (Tr. 371). The ALJ asked the VE to clarify whether some of the jobs identified could be performed if the person was limited to unskilled work. Id. The VE indicated the person limited to unskilled work could perform the duties of a price marker, a leveler, or a cashier. (Tr. 371). The ALJ asked the VE to state whether working as a surveillance system monitor, an assembler, or a food and beverage order clerk would require minimal interaction with the public, coworkers, and supervisors. (Tr. 372). The VE pointed out that as a food and beverage clerk, the person would talk to the public constantly via intercom, but would not have direct, face-to-face contact. Id. The VE indicated that as a surveillance system monitor or an assembler there would be minimal person-to-person interaction. (Tr. 373).

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is

11

not disabled. 29 C.F.R. § 404.1520(b), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c), 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d), 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e), 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f), 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, at step one, the ALJ found Plaintiff engaged in substantial gainful activity between his alleged onset date of May 1, 2001 and his date last insured, March 31, 2006. (Tr. 14). Specifically, the ALJ found Plaintiff was engaged in substantial gainful activity from at least February 2005 through December 2005 and therefore, the ALJ determined Plaintiff was not disabled for that period of time. Id. Nevertheless, the ALJ continued the sequential evaluation process for May 1, 2001 through February 2005 and January 2006 through March 31, 2006, the date Plaintiff was last insured. (Tr. 15). At step two, the ALJ determined Plaintiff had the following severe impairments:

> right shoulder impingement syndrome; status post right
> shoulder surgery on March 20, 2006; vision loss in the left
> eye; status post undifferentiated connective tissue disease;

> degenerative joint disease involving the right shoulder AC
> joint and adhesive capsulitis with resulting shoulder pain and
> some alleged depression.

(Tr. 15).  Third, the ALJ determined Plaintiff did not have any impairment or combination

of impairments that met or medically equaled a listed impairment.  Fourth, the ALJ

determined Plaintiff had the residual functional capacity (RFC) to:

> lift and/or carry, and push/pull 20 pounds occasionally and 10
> pounds or less more frequently; walk and/or stand for
> approximately six hours out of an eight hour day and sit for
> approximately six hours out of an eight hour day. Secondary
> to his visual impairment, [Plaintiff] cannot perform work
> involving small objects.  [Plaintiff] is unable to do any climbing
> or work around unprotected heights or dangerous moving
> machinery.  Because of his right shoulder impairment,
> [Plaintiff] is limited in his ability to perform overhead to an
> occasional basis and cannot perform constant reaching or
> pushing/pulling.  Secondary to his mental disorder, he is
> limited to simple repetitive tasks (i.e. unskilled work).

(Tr. 16).  Considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined Plaintiff could perform work at a light level of exertion.  (Tr. 17).  Therefore,

Plaintiff was capable of making a successful adjustment to work that existed in significant

numbers in the national economy.  (Tr. 21-22).  Ultimately, the ALJ found Plaintiff was

not under a "disability" as defined in the Social Security Act, at any time from May 1,

2001, the alleged onset date through March 31, 2006, the date last insured.  (Tr. 23).

III.    ANALYSIS

    A.    The Standard of Review

    The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988),

and whether the findings are supported by substantial evidence.  Richardson v. Perales,

402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings).

**B.    Issues on Appeal**

Plaintiff argues the following issues on appeal: (1) the ALJ erred by posing incomplete hypothetical questions to the VE and should not have relied on the VE's opinion, (2) the ALJ failed to adequately develop the record, (3) the ALJ failed to consider all of Plaintiff's impairments singly or in combination, (4) the ALJ did not properly evaluate Plaintiff's complaints of pain, and (5) the ALJ failed to accord proper weight to the opinion of Plaintiff's treating doctor. The Court will address each of the issues raised by Plaintiff.

### 1.    Hypothetical questions posed to the VE

Plaintiff argues the ALJ erred in relying on the VE's opinion because the ALJ did

not present the VE with a complete hypothetical.  (Doc. 16, p. 18).  Specifically, Plaintiff

claims the ALJ failed to incorporate Plaintiff's need to alternate between sitting and

standing and Plaintiff's mental health impairments into the hypothetical.  (Doc. 16, pp.

16-18).

### a.    Plaintiff's alleged need to alternate between sitting and standing

Plaintiff argues the ALJ should have included his sit/stand limitation in the

hypothetical posed to the VE because a sit/stand limitation is a significant non-exertional

limitation and the record clearly shows Plaintiff had this limitation.  (Doc. 16, p. 15).

Plaintiff points out that one Social Security examiner stated Plaintiff "would need to

periodically alternate sitting and standing to relieve pain or discomfort when sitting."

(Doc. 16, p. 15).  Plaintiff also claims the medical record and Plaintiff's testimony

regarding pain and restrictions in movement reflect Plaintiff's sit/stand limitation.  (Doc.

16, p. 16).

The Commissioner contends the evidence supports the ALJ's RFC finding and the

hypothetical presented to the VE.  (Doc. 17, p. 7).  With respect to Plaintiff's alleged

sit/stand limitation, first, the Commissioner points out that the Social Security Examiner

referenced by Plaintiff was an Agency single-decision maker ("SDM"), not a medical

consultant.  (Doc.17, p. 6).  Second, the Commissioner argues the SDM only stated

Plaintiff had a sit/stand limitation based on his review of Dr. Pulwers's June 2004 notes,

but, a careful reading of Dr. Pulwers's June 2004 notes indicates Dr. Pulwers did not

actually set forth a sit/stand limitation.  Id.  Instead, the Commissioner contends, Dr.

Pulwers's notes actually reflect Plaintiff's subjective statement that he could only sit and stand for 1 hour each, and such evidence is not sufficient to show Plaintiff had the alleged limitation. Id. The Commissioner further points out that in February 2005, when a state agency medical consultant, Dr. Andriole, reviewed Plaintiff's medical records, he did not opine Plaintiff had a sit/stand limitation. Id. As such, the Commissioner contends the ALJ's decision not to include a sit/stand limitation in his RFC assessment or the hypothetical question posed to the VE is supported by the evidence. Id.

Based on the Court's independent review of the record, it is evident the ALJ did not include a sit/stand limitation in either Plaintiff's RFC or the hypothetical posed to the VE. (Tr. 16, 369-373). However, the ALJ is only required to accept and include in the hypothetical limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999); see Lanier v. Comm'r Soc. Sec., 252 Fed. Appx. 311, 315 (11th Cir. 2007) (additional claimed impairments that were not supported by objective medical evidence need not be included in the hypothetical). Therefore, to resolve Plaintiff's contention, the Court will consider whether the alleged sit/stand limitation is supported by substantial evidence in the record.

On July 16, 2004, an agency SDM completed a Physical Residual Functional Capacity Assessment form and opined one of Plaintiff's exertional limitations was the need to alternate sitting and standing, periodically, to relieve pain and discomfort. (Tr. 206). The SDM explained his opinion was based on the findings of one of Plaintiff's consultative examiners, Dr. Pulwers, which indicated Plaintiff had a sit/stand limitation. Id. However, upon review of Dr. Pulwers's notes, dated June 18, 2004, the Court finds Dr. Pulwers did not state Plaintiff had a sit/stand limitation. (Tr. 176-179). Plaintiff reported to Dr. Pulwers that he could only stand for one hour at a time, but Dr. Pulwers

did not note any such limitation based on his own examination or observation of Plaintiff. (Tr. 176). Additionally, as the Commissioner points out, in July of 2005, an agency medical consultant, Dr. Andriole, completed another Physical Residual Functioning Capacity Assessment form on which he indicated Plaintiff was able to sit with normal breaks for a total of 6 hours in an 8-hour workday. (Tr. 235). As such, Dr. Andriole, did not opine Plaintiff had a sit/stand limitation. Id. Furthermore, the undersigned notes Plaintiff does not highlight, nor does the Court find, that any of Plaintiff's other treating or examining physicians opined Plaintiff had a sit/stand limitation. Because there is no additional evidence in the record to support Plaintiff's alleged limitation and the "medical" opinion of a SDM is not entitled to any weight,[4] the Court finds Plaintiff's alleged sit/stand limitation was not supported by the record. Lanier, 252 Fed. Appx. 311 at 315. Accordingly, the ALJ was not required to adopt the opinion of the SDM, and the Court concludes the ALJ's decision to omit Plaintiff's alleged sit/stand limitation from the hypothetical is supported by substantial evidence.

### b. Plaintiff's mental impairments

Plaintiff argues that despite several references to Plaintiff's mental health difficulties in the record, the ALJ failed to present a hypothetical to the VE which contained restrictions in mental health functioning. (Doc. 16, pp. 16-18). Specifically, Plaintiff contends the hypothetical question should have included moderate or light deficiencies in concentration, persistence, and pace. (Doc. 16, p. 18).

_____

[4]See Bolton v. Astrue, No. 3:07-cv-612-J-HTS, 2008 WL 2038513, at *3 (M.D. Fla. May 12, 2008) (citing Velasquez v. Astrue, Civil Action No. 06-cv-02538-REB, 2008 WL 791950, at *3 (D.Colo. Mar. 20, 2008); see also, Johnson v. Barnhart, No. 03-166-B-W, 2004 WL 1529296, at *4 (D.Me. June 24, 2004) (report and recommendation of magistrate judge adopted by Johnson v. Barnhart, 2004 WL 1572705 (July 13, 2004) (finding opinion of SDM is like that of a lay person and is not entitled to any weight)).

The Commissioner argues that because the evidence indicates Plaintiff's mental impairments were not severe, the ALJ did not err in the hypothetical presented to the VE. (Doc. 17, p. 7).  Specifically, the Commissioner points to the fact that psychologist, Dr. Verones, diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Mild" and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60.  Id.  As such, the Commissioner argues a GAF of 60 confirms Plaintiff's mental impairment limitations were only moderate.  Id.  The Commissioner also points out that while Plaintiff was seen by mental health providers for assessment purposes, Plaintiff testified he was not being treated by any psychologist, psychiatrist, or mental health practitioner.  Id.

When evaluating mental impairments, the Social Security Regulations require that the ALJ use the "special technique" dictated by the Psychiatric Review Technique Form ("PRTF").  Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing C.F.R. § 404.1520a-(c)(3-4) and 404.1520a-(e)(2).  The Psychiatric Review Technique requires separate evaluations of how the claimant's mental impairments impact four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation.  Id.  It is the duty of the ALJ to incorporate the results of this "special technique" into his findings and conclusions.  Id.  The severity requirement for mental impairments cannot be satisfied when the evidence shows the claimant has the ability to perform basic work activities.[5]  See SSR 85-28, 1985 WL 56856 (Nov. 30, 1984).  see also Freeman v. Barnhart, 220 Fed. Appx. 957, 961 (11th

---

[5]Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in routine work setting."  SSR 85-28.

Cir. 2007) (holding substantial evidence showed claimant's mental illness did not significantly limit her ability to work where she received treatment for depression and even though she remained symptomatic, she was alert, active, stable, and improved).

Generally, the ALJ need not include in the hypothetical impairments which do not severely limit the claimant's ability to work. See Jones v. Comm'r of Soc. Sec., 181 Fed. Appx. 767, 771 (11th Cir. 2006) (holding the hypothetical posed to the VE need not include limitation as to concentration because the claimant's daily activities and a doctor's report "do not necessitate a finding that [the claimant] has severe impairments in her concentration"); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1251 (M.D. Ala. 2001) (holding ALJ's hypothetical questions were proper where they included only impairments the ALJ found to be severe). However, in order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical that adequately incorporates all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).

In this case, the Court finds the ALJ properly performed the psychiatric review technique. The ALJ evaluated Plaintiff's mental impairment under Listing 12.04 of Appendix 1, Subpart P, and determined based on the evidence, Plaintiff's mental impairment caused "mild" degree of limitation in the area of activities of daily living and "moderate" degree of limitation in maintaining social functioning. (Tr. 15-16). The ALJ also determined Plaintiff had "moderate" limitation in maintaining concentration, persistence, and pace and no episodes of deterioration or decompensation. Id. As such, the ALJ concluded Plaintiff's functional limitations were not severe enough to satisfy the requirements of Listing 12.04, paragraph B. Additionally, the ALJ evaluated Plaintiff's mental impairment under paragraph C's criteria for Listing 12.04 and found that

because Plaintiff had never sought ongoing treatment for his mental impairment, it was unclear whether Plaintiff's impairment met the two year duration requirement of paragraph C. (Tr. 16). The ALJ then translated the paragraph "B" and "C" criteria findings into work-related functions in the RFC assessment. Id. In the ALJ's RFC finding he stated, "secondary to [Plaintiff's] mental disorder," Plaintiff was limited to "simple repetitive tasks (i.e. unskilled work)." Id.

In presenting the hypothetical to the VE, the ALJ asked which jobs a person like Plaintiff would be able to do if he was limited to "unskilled work." (Tr. 371). As such, while the ALJ did not specifically state that the hypothetical person had "mild to moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace," the Court finds the language used by the ALJ limiting the hypothetical individual to unskilled work, sufficiently incorporated Plaintiff's mental limitations. See West v. Astrue, No. 5:02-CV-305 (CWH) 2009 WL 1241409, at *5 (M.D. Ga. May 1, 2009) (analyzing the language used by the ALJ to incorporate the plaintiff's mental impairments). Furthermore, based on the ALJ's final question to the VE,[6] it appears the ALJ also considered Plaintiff's limited mental ability to interact with people. (Tr. 372). Id. at *4 (considering whether the ALJ's incorporation of a limitation on public contact, *inter alia*, adequately incorporated the plaintiff's mental impairments). Accordingly, the Court concludes the ALJ's hypothetical question adequately incorporated Plaintiff's mental limitations. The Court finds the ALJ properly performed the psychiatric review technique and included all of Plaintiff's functional limitations in the

_____

[6]The ALJ asked the VE if the three last jobs identified, surveillance system monitor, assembler, and food and beverage order clerk, required minimal interaction with the public, with coworkers, and supervisors. (Tr. 372).

hypothetical question presented to the VE. Therefore, the ALJ did not err in relying on the VE's opinion.

## 2. The ALJ's duty to develop the record

Generally, the ALJ is charged with developing a full and fair record. <u>Graham v. Apfel</u>, 129 F.3d 1420, 1423 (11th Cir. 1997). However, even when the Court determines the ALJ failed in his duty to fully and fairly develop the record, a plaintiff will only be entitled to a remand upon a showing of prejudice.[7] <u>Brown v. Shalala</u>, 44 F.3d 931, 935 (11th Cir. 1995). In this case, Plaintiff claims the ALJ did not fully develop the record with respect to Plaintiff's mental impairments. (Doc. 16, p. 19). Plaintiff contends that because there was a clear conflict between the opinions of Plaintiff's examining and non-examining psychologists as to the extent of Plaintiff's mental limitations, the ALJ should have ordered a second mental health evaluation. <u>Id.</u>

The Commissioner argues the ALJ did not state he needed additional evidence to render a decision, nor did he state there was any special situation requiring further development of the record. (Doc. 17, p. 8). The Commissioner notes the ALJ properly relied on Dr. Verones's assignment of a GAF score of 60 to find that Plaintiff only had moderate mental symptoms and functional limitations. <u>Id.</u> Therefore, the Commissioner argues the ALJ was under no obligation to order an additional consultative examination. <u>Id.</u> Furthermore, the Commissioner argues remand for further development of the record is only required where Plaintiff demonstrates prejudice as a result of the ALJ's failure, and Plaintiff has shown no such prejudice in this case. (Doc. 17, p. 8).

_____

[7]A likelihood of prejudice may arise if there is an evidentiary gap that "the claimant contends supports her allegations of disability." <u>Johnson v. Barnhart</u>, 138 Fed. Appx. 186, 189 (11th Cir. 2005) (quoting <u>Brown</u>, 44 F.3d at 936, n. 9).

In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes such an examination is ***necessary*** to enable the ALJ to render an informed decision.  <u>See</u> <u>Holladay v. Bowen</u>, 848 F.2d 1206, 1210 (11th Cir. 1988) (emphasis added).  Pursuant to 20 C.F.R. § 404.1515a(b)(4), a consultative examination must be ordered when, <u>inter</u> <u>alia</u>, there is a conflict to be resolved and it cannot be resolved by re-contacting a claimant's treating source.  20 C.F.R. § 404.1515a(b)(4).  Here, in establishing his finding regarding Plaintiff's mental impairments, the ALJ seems to have relied on the results of the consultative psychological evaluation performed by Dr. Verones on February 11, 2005.  (Tr. 19).  The ALJ determined Dr. Verones's report showed Plaintiff's mental problems "were not that severe" because Plaintiff was assigned a GAF of 60.  <u>Id.</u>  The ALJ also noted despite his mental impairments, Plaintiff had never sought psychiatric treatment or been referred to a mental health professional.  (Tr. 18-19).

In order to determine whether the ALJ adequately performed his duty to develop the record, the Court will first decide whether substantial evidence supports Plaintiff's claim that there was a conflict in the evidence regarding the extent of his mental health limitations.  <u>See</u> (Doc. 16, p.19).  On June 6, 2004, Dr. Luvigh, an examining doctor, completed a personality assessment and a psychodiagnostic evaluation of Plaintiff.  (Tr. 163).  Dr. Luvigh diagnosed Plaintiff with PTSD, major depression (recurrent and mild), and generalized anxiety disorder.  (Tr. 166).  Dr. Luvigh concluded Plaintiff's mental impairments caused "very substantial emotional distress."  <u>Id.</u>  Dr. Luvigh opined Plaintiff did not appear capable of maintaining stable employment and was not expected to be able to maintain stable employment within twelve months.  <u>Id.</u>  Dr. Luvigh recommended

Plaintiff obtain both psychiatric treatment and psychotherapy for his mental health conditions.  Id.

On June 29, 2004, less than a month after Dr. Luvigh's assessment, Dr. Verones, also an examining doctor, completed a psychological evaluation of Plaintiff.  (Tr. 246). Dr. Verones indicated Plaintiff suffered from PTSD due to his work in the prison system. (Tr. 249).  Dr. Verones opined Plaintiff was not capable of maintaining employment as a result of his depressed mood and his anxiety.  Id.   Dr. Verones assigned Plaintiff a GAF score of 55 and opined Plaintiff was disabled "from a mental health standpoint."  (Tr. 248-249).

Almost eight months later, on February 11, 2005, Dr. Verones completed another psychological evaluation of Plaintiff.  (Tr. 242).  This time, Dr. Verones assigned Plaintiff a GAF score of 60.  (Tr. 244). Dr. Verones opined Plaintiff was experiencing some depression, but indicated Plaintiff was not reporting any symptoms consistent with PTSD.  (Tr. 245).  After Dr. Verones's February 2005 assessment, Dr. Verones opined Plaintiff's physical health was his main problem.  Id.

On March 3, 2005, one month after Dr. Verones's evaluation, a non-examining, agency psychologist, Dr. Weber, indicated while Plaintiff had a history of depression and mental health treatment, he was not under any treatment at that time.  (Tr. 262, 266). Dr. Weber opined Plaintiff had moderate limitations in activities of daily living and maintaining concentration, persistence or pace and mild limitations in maintaining social functioning.  Id.

Contrary to Plaintiff's claim, the Court does not find the record reflects a conflict regarding the extent of Plaintiff's mental impairments.  In 2004, within a month of each

other, Dr. Luvigh and Dr. Verones opined Plaintiff was unable to work because of his mental impairments. However, approximately eight months later, Dr. Verones re-evaluated Plaintiff and found his mental condition had improved. Shortly thereafter, Dr. Weber provided a similar opinion of Plaintiff's mental impairments. As such, any variation in the reports of Plaintiff's mental condition seems to have more to do with the improvement of Plaintiff's condition over time than a conflict between the opinions of Plaintiff's examining and non-examining psychologists. Additionally, it appears the ALJ considered Plaintiff's report that his depression was better with medication and the fact that Plaintiff had not undergone any significant psychiatric treatment, to establish his findings regarding Plaintiff's mental impairments. Accordingly, substantial evidence in the record enabled the ALJ to render an informed decision and the ALJ was not obligated to order an additional consultative evaluation in order to assess Plaintiff's mental impairments. The Court finds the ALJ did not err in his duty to develop the record.

### 3. The ALJ's duty to consider all of Plaintiff's impairments in combination

Plaintiff further contends the ALJ failed to consider all of his severe and non-severe impairments in combination. (Doc. 16, p. 20). There is a requirement that the ALJ consider the combination of impairments even when the impairments separately are not severe. See Bruet v. Barnhart, 313 F. Supp. 2d 1338, 1346 (M.D. Fla. 2004) (citing Hudson v. Heckler, 755 F.2d 781 (11th Cir. 1985)). Plaintiff argues the ALJ failed to consider the effects of Plaintiff's mental health impairments even though two psychologists opined Plaintiff was unable to work as a result of them. (Doc. 16, p. 21).

The Commissioner contends the ALJ's recognition of his duty to evaluate all of

Plaintiff's impairments and resulting limitations in combination is evidenced in the ALJ's finding that "Plaintiff did not have an impairment or combination of impairments that met or medically equaled any sections of the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P. App. 1." (Doc. 17, p. 8). Additionally, the Commissioner suggests the language used by the ALJ in making his RFC finding indicated the ALJ properly considered all of Plaintiff's impairments and resulting limitations in combination. (Doc. 17, p. 9).

The ALJ is required to make "specific and well-articulated findings" regarding the combined effect of the claimant's impairments and determine whether, when considered together, the impairments are disabling. Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). While it is not always clear how much analysis constitutes "specific and well articulated" findings, in Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991), the Eleventh Circuit held that the ALJ's statement that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4," was sufficient evidence the ALJ had considered the combined effect of the claimant's impairments. Jones, at 1533. Further, in Sneed v. Barnhart, 214 Fed. Appx. 883, 887 (11th Cir. 2006), the court held the ALJ's conclusory statement that he considered whether the claimant suffered from any impairment or combination of impairments was sufficient to satisfy the ALJ's duty. Sneed, 214 Fed. Appx. 883 at 887.

Here, the ALJ stated Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1325 and 404.1320), through the

date last insured." (Tr. 16). The ALJ also stated Plaintiff's "impairments, either singly or in combination do not meet or equal in severity any listed impairment in Appendix 1, Subpart P, Regulations No. 4." Id. Similar to the court in Jones and in Sneed, this Court finds these statements are sufficient to show the ALJ considered all of Plaintiff's impairments in combination. Furthermore, while Plaintiff argues the ALJ failed to consider Plaintiff's mental impairments, the Court finds evidence of the ALJ's consideration of Plaintiff's mental health permeates the decision. First, the ALJ discussed Plaintiff's mental impairments in performing the psychiatric review technique. See (Tr. 15-16). The ALJ also showed his consideration of Plaintiff's mental impairments in his RFC finding, through the use of the words, "secondary to [Plaintiff's] mental disorder." See (Tr. 16). Further, the Court notes the ALJ discussed Plaintiff's mental health in establishing his credibility finding. See (Tr. 18-20). Accordingly, the Court concludes substantial evidence indicates the ALJ properly performed his duty to consider all of Plaintiff's impairments in combination, including Plaintiff's mental difficulties.

### 4.    The ALJ's evaluation of Plaintiff's pain

Fourth, Plaintiff claims the ALJ did not properly evaluate his subjective allegations of disabling pain and other limitations. (Doc. 16, pp. 21-24). In determining whether the medical signs and laboratory findings show medical impairments which could reasonably be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Pain alone can be disabling, even when its existence is unsupported by objective

evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an

individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. §

423(d)(5)(A). Therefore, when the ALJ decides not to credit a claimant's testimony about

pain, he must articulate specific and adequate reasons for doing so, or the record must

be obvious as to the credibility finding. Jones, 941 F.2d at 1532 (stated reasons must be

based on substantial evidence); see also Moore v. Barnhart, 405 F.3d 1208, 1212 n.4

(11th Cir. 2005) (holding precedent in the Eleventh Circuit requires "explicit articulation of

the reasons justifying a decision to discredit a claimant's subjective pain testimony"). As

a matter of law, the failure to articulate the reasons for discrediting subjective pain

testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62;

Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). A reviewing court will not

disturb a clearly articulated credibility finding with substantial supporting evidence in the

record. MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

Here, based on the ALJ's listing of Plaintiff's severe impairments, it appears the

ALJ properly applied the Eleventh Circuit pain standard. However, the ALJ found

Plaintiff's testimony in general, lacked sufficient indicia of credibility to be accorded much

weight. (Tr. 18). Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting

Plaintiff's complaints as to the limiting effects of his mental health and physical

capabilities. (Doc. 16, p. 22). Plaintiff alleges several statements made by the ALJ

amounted to the ALJ making independent medical findings about Plaintiff's impairments.

Id. Specifically, Plaintiff argues the following statements made by the ALJ were

inappropriate and did not provide sufficient reason to discredit Plaintiff's testimony: 1) "Plaintiff's testimony at the hearing was clear, coherent, and goal directed," 2) "Plaintiff's pain did not interfere with his ability to concentrate and respond appropriately to questioning at the hearing," 3) "[t]here were no signs of any confusion associated with pain or side effects of medication," and 4) "Plaintiff did not exhibit any signs of discomfort." (Doc. 16, p. 23). Additionally, Plaintiff argues the fact that Plaintiff was capable of performing some daily activities is not sufficient to discredit his testimony and neither Plaintiff's testimony or the other evidence in the record indicate Plaintiff had a physically and mentally active schedule. Id.

The Commissioner contends the ALJ's credibility finding is substantially supported by the evidence of record. (Doc. 17, p. 12). In particular, the Commissioner argues that in making his credibility finding, the ALJ properly relied on the report of examining medical source, Dr. Carpenter, and portions of Plaintiff's testimony. Id. The Commissioner also contends that despite Plaintiff's alleged disability due to his right shoulder injury, the ALJ properly relied on Dr. Acker's notes in finding Plaintiff did not have disabling right shoulder limitations. Id.

As an initial matter, the Court notes the ALJ highlighted the coherence, concentration, and absence of confusion or outward signs of discomfort with which Plaintiff testified. (Tr. 21). The Eleventh Circuit has held that "a[n] ALJ is not a trained clinician, and should not attempt to make clinical judgments about the presence of pain based upon a short one-time observation of the plaintiff at the hearing." Bennett v. Barnhart, 288 F. Supp. 2d 1246, 1250 -1251) (N.D. Ala. 2003) (citing McRoberts v. Bowen, 841 F.2d 1077, 1081(11th Cir. 1988) (holding "sit and squirm" jurisprudence has

no place in this circuit)).  Accordingly, this Court finds the ALJ erred in using Plaintiff's appearance and behavior at the hearing as a reason for discrediting Plaintiff's testimony.  However, upon further review, it appears the ALJ considered all the evidence and did not discredit Plaintiff's testimony based solely on his observation of Plaintiff at the hearing.

In this case, the ALJ provided several other reasons for discrediting Plaintiff's testimony.  To begin with, the ALJ determined that when the record was considered in its entirety, Plaintiff had some limitation in the use of his right shoulder, but there was no evidence Plaintiff could not perform light work activities consistent with the noted RFC.  (Tr. 21).  The ALJ noted despite Plaintiff's claim of disability due to his right shoulder injury, Dr. Acker indicated Plaintiff's continuing right shoulder problems would improve over time.  (Tr. 19).  The ALJ also reasoned that although Plaintiff claimed to be disabled due to tissue disease, the clinical findings regarding the same were not conclusive and the results of Dr. Carpenter's January 2005 consultative examination were not significant.  (Tr. 18).  Further, the ALJ determined despite Plaintiff's physical and mental limitations, he was able to perform most of his daily activities without difficulty.  (Tr. 20).  As such, the ALJ reasoned that despite Plaintiff's claim of disabling limitation, the evidence showed Plaintiff's impairments did not prevent him from performing unskilled work at a light-level of exertion.  (Tr. 22).  Finally, the ALJ determined Plaintiff's work activity in 2005 detracted from Plaintiff's credibility as a whole.  (Tr. 20).  The Court finds substantial evidence supports the other reasons provided by the ALJ and therefore, the Court will not disturb the ALJ's credibility finding.

When evaluating a claim based on a claimant's subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating sources,

and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). Here, it appears the ALJ's credibility determination did not turn on any one of the reasons provided by the ALJ. The ALJ considered all of the evidence together and found limited evidence in the record to support the alleged severity of Plaintiff's subjective complaints. See Harris v. Astrue, No. 07-22334-CIV, 2008 WL 4725194, at *6 (S.D. Fla. Oct. 24, 2008) (affirming clearly articulated credibility finding based on clinical data, testimony, demeanor at the hearing, medications, daily activities, and motivations). The Court concludes the ALJ provided an adequate evaluation of Plaintiff's pain testimony.

### 5. Weight placed on opinions of Plaintiff's treating and examining physicians

The ALJ is required to give controlling weight to the opinion of a treating physician because a treating physician is one who is able to provide a detailed longitudinal picture of the claimant's impairment(s). 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion must be given "substantial or considerable weight unless 'good cause' is shown to the contrary." Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (citing Lewis, 125 F.3d 1436 at 1439). The Eleventh Circuit has found there is "good cause" to place less weight on the opinion of a treating physician where: (1) the opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Id. Where an ALJ discounts or rejects a treating physician's opinion, he is required to articulate his reasons for doing so. Phillips v. Barnhart, 357 F.3d. 1232, 1241 (11th Cir. 2004). An ALJ commits reversible error if he fails to articulate reasons for discounting a treating physician's opinion. See Lewis, 125 F.3d at 1440.

Plaintiff argues the ALJ erred in rejecting Dr. Ward's opinion because Dr. Ward had full knowledge of Plaintiff's mental health and physical impairments. (Doc. 16, p. 24). Plaintiff contends subsequent to Plaintiff's right shoulder surgery, Dr. Ward found Plaintiff should be on permanent disability and there was documented evidence in the record to support Dr. Ward's opinion. Id. The Commissioner argues the ALJ was correct in placing limited weight on the opinion of Dr. Ward because an opinion of a medical source that a claimant is "disabled" is reserved to the Commissioner. (Doc. 17, p. 13). Additionally, the Commissioner argues the ALJ properly noted Dr. Ward's opinion was contrary to evidence from other medical sources. Id.

With respect to Dr. Ward's opinion, first, the ALJ noted it was an opinion on an issue exclusively reserved for the Commissioner. (Tr. 20). Additionally, the ALJ determined Dr. Ward's opinion was not supported by the objective medical evidence and was contradicted by the findings of other doctors. Id.

Upon review, Plaintiff visited Dr. Ward for the first time on September 23, 2004. (Tr. 215). Plaintiff's chief complaints were depression and numbness in his hands. Id. Dr. Ward noted mixed connective tissue disease, depression, left eye blindness, degenerative disc disease, and bipolar personality disorder. Id. Dr. Ward prescribed 60 mg of Cymbalta. Id. Plaintiff saw Dr. Ward again on October 18, 2004, at which time Plaintiff reported that his mood had improved. (Tr. 214). However, Plaintiff complained his hips ached. Id. Dr. Ward continued the prescription for Cymbalta and started Plaintiff on Aleve and ice for his hip. Id. On November 29, 2004, Plaintiff visited Dr. Ward for the flu and for new medication. (Tr. 213). Dr. Ward diagnosed depression and renewed Plaintiff's prescription for 60 mg of Cymbalta. Id. Although there are no other

31

progress notes from Dr. Ward, by letter dated April 11, 2007, Dr. Ward opined Plaintiff should be on permanent disability. Id.

As noted, the ALJ has good cause to limit the weight placed on the opinion of a treating source which is conclusory or inconsistent with the doctor's own medical records or is not bolstered by the evidence. Phillips, 357 F.3d. 1232 at 1241. Apart from the prescription for Aleve and ice, none of Dr. Ward's notes show serious concern for Plaintiff's arthritic pain or heart palpations. In fact, at each of Plaintiff's three recorded visits to Dr. Ward, Dr. Ward noted the examination of Plaintiff's heart was normal. (Tr. 213, 214, 215). Dr. Ward's recurring diagnosis was depression for which he prescribed Cymbalta. However, on October 18, 2004, after only three weeks of taking the prescribed medication, Plaintiff reported his mood was improved. (Tr. 214). As such, Dr. Ward's opinion seems inconsistent with his own notes. Furthermore, despite Plaintiff's insistence that Dr. Ward's opinion of Plaintiff's permanent disability should have been given controlling weight, 20 C.F.R. § 404.1527(e)(3) provides the ALJ should not give any special significance to the source of such a conclusory opinion because a determination of whether a claimant is "disabled" or "unable to work" is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1) and (3). Accordingly, the Court finds substantial evidence supports the ALJ's evaluation of Dr. Ward's opinion.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this <u>26th</u> day of August, 2009.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record